ELLEN F. ROSENBLUM
Attorney General
BRIAN SIMMONDS MARSHALL #196129
THOMAS CASTELLI #226448
Senior Assistant Attorney General
ANURADHA SAWKAR #181564
Assistant Attorney General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  Brian.S.Marshall@doj.state.or.us
         thomas.castelli@doj.state.or.us
         anu.sawkar@doj.state.or.us

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DENNIS LINTHICUM; REJEANA JACKSON; KLAMATH COUNTY REPUBLICAN CENTRAL COMMITTEE; BRIAN J. BOQUIST; JOHN SWANSON; POLK COUNTY REPUBLICAN CENTRAL COMMITTEE; CEDRIC HAYDEN; JOHN LARGE; and LANE COUNTY REPUBLICAN CENTRAL COMMITTEE, <br><br> Plaintiffs, <br><br> v. <br><br> OREGON SENATE PRESIDENT ROB WAGNER, individually and in his official capacity; OREGON SECRETARY OF STATE LAVONNE GRIFFIN-VALADE, in her official capacity, <br><br> Defendants. | Case No.  6:23-cv-01624-AA <br><br> DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION |

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................... 1

II.    BACKGROUND ..................................................................................... 2

    A.    Measure 113 ................................................................................. 2

    B.    The Oregon Legislative Assembly's 2023 Session ..................... 4

        1.    The Legislative Assembly's Rules ...................................... 4

        2.    The Senate Walkout ............................................................ 5

        3.    The Plaintiff Senators ......................................................... 6

            a.    Senator Boquist. ....................................................... 6

            b.    Senator Linthicum. ................................................... 8

        4.    The Secretary's Determination ......................................... 11

    C.    Pending Litigation ..................................................................... 11

        1.    The State Court Litigation ................................................ 11

        2.    This Federal Case .............................................................. 12

III.   LEGAL STANDARDS ....................................................................... 12

IV.   ARGUMENT ....................................................................................... 13

    A.    Plaintiffs Are Unlikely to Succeed on the Merits of Their First
            Amendment Retaliation Claims. ............................................... 13

        1.    The Oregon Constitution's Disqualification of Absent Legislators
              Does Not Implicate the First Amendment. ...................... 14

        2.    The Senate's Decision Not to Excuse the Plaintiff Senators'
              Absences Does Not Violate the First Amendment. ........... 16

            a.    The First Amendment Does Not Require the Senate to
                 Excuse Absences to Facilitate Senators' Denial of a
                 Quorum. ................................................................... 16

            b.    The Plaintiff Senators Accrued More Than 10 Absences for
                 the Walkout Only, so Absences for Other Reasons are
                 Immaterial. ............................................................... 19

            c.    Legislative Immunity Bars Plaintiffs' Challenge to the
                 Senate's Decision Not to Excuse Their Absences. ....... 20

    B.    The Balance of the Equities Disfavors a Preliminary Injunction ....... 25

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

1.    Plaintiffs have not shown irreparable harm. .............................................. 26

2.    The balance of equities disfavors an injunction. ....................................... 26

V.    CONCLUSION ............................................................................................................ 27

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

# TABLE OF AUTHORITIES

**Cases**

*All. For the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011)............................................ 13

*Anderson v. Celebrezze,* 460 U.S. 780 (1983) .................................................................... 14

*Ashcroft v. American Civil Liberties Union*, 535 U.S. 564 (2002)................................................. 13

*Associated Gen. Contractors of Cal., Inc. v. Coal. For Econ. Equity*, 950 F.2d 1401 (9th
    Cir. 1991);.......................................................................................................... 26

*Bates v. Jones*, 131 F.3d 843 (9th Cir. 1997)......................................................................... 14, 15

*Berry v. Crawford*, 990 N.E.2d 410 (Ind. 2013)..................................................................... 18

*Blair v. Bethel Sch. Dist.*, 608 F.3d 540 (9th Cir. 2010)........................................................... 16

*Bogan v. Scott-Harris*, 523 U.S. 44 (1998)........................................................................ 21, 25

*Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60 (1983) ...................................................... 13

*Boquist v. Courtney*, 32 F.4th 764 (9th Cir. 2022) ......................................................... 16, 18, 19

*Bullock v. Carter*, 405 U.S. 134 (1972) ............................................................................. 14

*Burdick v. Takushi*, 504 U.S. 428 (1992) ........................................................................... 14

*Chappell v. Robbins*, 73 F.3d 918 (9th Cir. 1996) ........................................................ 20, 21, 25

*Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288 (1984) ............................................... 13

*Clayton v. Kiffmeyer*, 688 N.W.2d 117 (Minn. 2004) ........................................................... 14

*Clements v. Fashing*, 457 U.S. 957 (1982) ......................................................................... 14

*Coal. for Econ. Equity v. Wilson,* 122 F.3d 718 (9th Cir. 1997) ................................................. 26

*Consumers Union of U. S., Inc. v. Periodical Correspondents' Ass'n*, 515 F.2d 1341
    (D.C. Cir. 1975) ................................................................................................ 22, 23

*Doe v. McMillan*, 412 U.S. 306 (1973)................................................................................ 22

*Dudum v. Arntz*, 640 F.3d 1098 (9th Cir. 2011) ................................................................... 14

*E.E.O.C. v. Washington Suburban Sanitary Comm'n*, 631 F.3d 174 (4th Cir. 2011) .................. 20

*Gamrat v. McBroom*, 822 F. App'x 331 (6th Cir. 2020)........................................................... 23

*Gravel v. United States*, 408 U.S. 606 (1972). ...................................................................... 22, 25

*Hartman v. Moore*, 547 US 250 (2006)............................................................................... 19

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239 (9th Cir. 2013) .................. 13

*Hernandez v. Oregon House of Representatives*, No. 6:21-CV-00238-AA, 2021 WL 5570112 (D. Or. Nov. 29, 2021) ........................................................................ 22, 23

*Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468 (2022) ............................................... 14

*In re Abbott*, 628 S.W.3d 288 (Tex. 2021) ................................................................ 17, 18

*In re North Dakota Legislative Assembly*, 70 F.4th 460 (8th Cir. 2023) ...................................... 21

*Jones v. Allison*, 9 F.4th 1136 (9th Cir. 2021) ............................................................. 22

*Kaahumanu v. Co. of Maui*, 315 F.3d 1215 (9th Cir. 2003) ...................................................... 21

*Keefe v. Roberts*, 116 N.H. 195 (1976) ...................................................................... 15

*Kilbourn v. Thompson*, 103 U.S. 168 (1880) ....................................................... 17, 22, 24

*Lopez v. Brewer*, 680 F.3d 1068 (9th Cir. 2012) .............................................................. 12

*Maryland v. King*, 567 U.S. 1301 (2012) ..................................................................... 26

*McAlmond v. Myers*, 262 Or. 521 (1972) ..................................................................... 27

*Nat'l Ass'n of Soc. Workers v. Harwood*, 69 F.3d 622 (1st Cir. 1995) ...................................... 22

*Nevada Commission on Ethics v. Carrigan*, 564 U.S. 117 (2011) ............................... 13, 14, 16, 17

*Nken v. Holder*, 556 U.S. 418 (2009) ................................................................ 13, 26

*Rangel v. Boehner*, 785 F.3d 19 (D.C. Cir. 2015) ............................................................. 23

*Reeder v. Madigan*, 780 F.3d 799 (7th Cir. 2015) ............................................................ 21

*Roth v. United States*, 354 U.S. 476 (1957) ................................................................. 13

*San Francisco Veteran Police Officers Ass'n v. City & Cnty. of San Francisco*, 18 F. Supp. 3d 997 (N.D. Cal. 2014) ...................................................................... 26

*San Pedro Hotel Co. v. City of Los Angeles*, 159 F.3d 470 (9th Cir. 1998) ................................. 21

*Schlitz v. Com. of Va.*, 854 F.2d 43 (4th Cir. 1988) ......................................................... 25

*Schultz v. Sundberg*, 759 F.2d 714 (9th Cir. 1985) .......................................................... 17

*Short v. Brown*, 893 F.3d 671 (9th Cir. 2018) ......................................................... 13, 26

*State ex rel Kristof v. Fagan*, 369 Or. 261 (2022) ......................................................... 11

*State v. Babson,* 355 Or. 383(2014). ....................................................................... 21

*Supreme Ct. of Virginia v. Consumers Union of U.S., Inc.*, 446 U.S. 719 (1980) ................. 20, 21

Page iv

*Tenney v. Brandhove*, 341 U.S. 367 (1951) ................................................................ 20, 21, 24, 25

*Thillens, Inc. v. Cmty. Currency Exch. Ass'n of Ill., Inc.*, 729 F.2d 1128 (7th Cir.) ................... 20

*United States v. Johnson*, 383 U.S. 169 (1966) .......................................................................... 24

*Video Gaming Techs., Inc. v. Bureau of Gambling Control*, 356 F. App'x 89 (9th Cir. 2009) .......................................................................................................................................... 26

*Whitener v. McWatters*, 112 F.3d 740 (4th Cir. 1997) .................................................. 23, 24, 25

*Winter v. Nat. Res. Def. Council*, 555 U.S. 7 (2008) ............................................................ 13, 26

## Statutes

ORS 171.051 ..................................................................................................................................... 27

ORS 171.134 ............................................................................................................................ passim

ORS 249.190 ..................................................................................................................................... 27

ORS 254.165 ..................................................................................................................................... 11

## Other Authorities

Joseph Story, *Commentaries on the Constitution* § 836 (5th ed. 1891) ........................................ 15

Mason's Legislative Manual (2020) ....................................................................................... 5, 15

Official Voters' Pamphlet, General Election, (Nov. 8, 2022) ......................................................... 3

Oregon Secretary of State, November 8, 2022, General Election Abstract of Votes .................... 3

Thomas C. McClintock, *Seth Lewelling, William S. U'Ren and the Birth of the Oregon Progressive Movement*, 68 Or. Hist. Q. 196, 210–14 (1967) ...................................................... 2

## Rules and Regulations

Senate Rule § 2.05 .......................................................................................................................... 4

Senate Rule 13.02 ................................................................................................................. 8, 10, 11

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

**Constitutional Provisions**

First Amendment ............................................................................................................ passim

Fourteenth Amendment .......................................................................................... 14, 15

Or. Const., art. IV............................................................................................................. passim

Oregon Constitution........................................................................................................ passim

U.S. Const., art. I, § 5...................................................................................................... 17

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## I.    INTRODUCTION

The Oregon Constitution disqualifies legislators who accrue 10 or more unexcused absences during a legislative session from serving a successive term.  In the 2023 legislative session, Senator Brian Boquist accrued 30 unexcused absences, while Senator Dennis Linthicum accrued 32. They are therefore ineligible to serve as legislators for the next term of office.

The Plaintiff Senators argue that the Senate's decision not to excuse their absences, and the Secretary of State's reliance on that decision, amounts to retaliation that violates the First Amendment. The Senators contend that because they were *motivated* by political objectives—to prevent the Senate from obtaining a quorum to stop certain legislation—their *conduct* in absenting themselves from the legislature is protected *speech*. That contention is meritless.

First, a legislator's absence from a legislative session is not protected speech. Rather, it is an official act that can carry a specific legal consequence: preventing the Senate from legislating by denying a quorum. Thus, like other forms of conduct, it is not entitled to First Amendment protection. It is therefore unsurprising that American legislatures, including the United States Congress and the Oregon Legislative Assembly, are empowered to compel the attendance of absent members—including by *imprisonment*. Given that a legislature has the constitutional authority to physically compel its members' attendance, it necessarily follows that a member's choice to remain absent is unprotected by the First Amendment.

Second, legislative immunity shields the Senate's decision not to excuse the Senators' absences from judicial challenge. Matters of internal discipline are quintessentially legislative decisions. Like other legislative decisions, they are subject to absolute immunity; Senators may contest the Senate's decision not to excuse their absences only in the legislature, not in the federal courts.

Because the Senators' First Amendment retaliation claim is meritless, they cannot show a likelihood of success, irreparable injury, or that an injunction is in the public interest. The motion for a preliminary injunction should therefore be denied.

Page 1 -   DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION

## II.    BACKGROUND

### A.    Measure 113

The Oregon Constitution requires each chamber of the legislature to have a quorum of two-thirds of its members to conduct business. Or. Const., art. IV, § 12. Because two-thirds members must be present, a group of more than one-third of members can deny quorum, rendering the legislature unable to conduct business through their absence.

Efforts by a minority of legislators to deny quorum—often called "legislative walkouts"—have occurred sporadically throughout Oregon's history.[1] The frequency of legislative walkouts increased significantly in recent years, particularly after a 2010 constitutional amendment limiting the duration of regular sessions of the Legislative Assembly. *See* Or. Const., art. IV, § 10. In May 2019, Senate minority members walked out for four days to block a school revenue bill, returning only after the Governor and legislative leaders agreed to not advance bills addressing guns and vaccination exemptions.[2] The next month, senators engaged in a prolonged walkout to block climate-change legislation.[3] In February 2020, House minority members engaged in a session-ending walkout to block another climate-change bill; as a result, the Legislature passed only three bills during the session.[4] In February 2021, Senate minority members walked out to object to the Governor's COVID-19 emergency response.[5] And later that year, House minority members walked out once again, delaying passage of legislative

---

[1] Thomas C. McClintock, *Seth Lewelling, William S. U'Ren and the Birth of the Oregon Progressive Movement*, 68 Or. Hist. Q. 196, 210–14 (1967); Tracy Loew, *Oregon Legislators in the Minority have often used Walkouts as Leverage*, Statesman J., June 20, 2019, *available at* https://tinyurl.com/4nknrd2m.

[2] *Id.*

[3] Julie Turkewitz, *Oregon Climate Walkout Left Republicans in Hiding, Statehouse in Disarray*, N.Y. Times, June 28, 2019, *available at* https://tinyurl.com/3syw358m.

[4] Connor Radnovich, *2020 Oregon Legislature's final tally: 3 bills passed, 255 abandoned*, Statesman Journal, Mar. 7, 2020, *available at* https://tinyurl.com/3jhyvtk3.

[5] Hillary Borrud, *Oregon Senate Republicans Walk Out for 3rd Straight Year, citing Governor's COVID-19 Restrictions*, Oregonian, Feb. 25, 2021, *available at* https://tinyurl.com/567c2dap.

Page 2 -    DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION

redistricting plans.[6] In each instance, the legislature could not conduct any legislative business until a quorum was achieved when the walkout ended.

Following those walkouts, Oregon voters approved Measure 113 (2022) with 68 percent of the vote, including majorities in 34 of 36 counties.[7]  Measure 113 added the following bolded language to Article IV, section 15, of the Oregon Constitution:

> Section 15. Punishment and expulsion of members. Either house may punish its members for disorderly behavior, and may with the concurrence of two thirds, expel a member; but not a second time for the same cause. **Failure to attend, without permission or excuse, ten or more legislative floor sessions called to transact business during a regular or special legislative session shall be deemed disorderly behavior and shall disqualify the member from holding office as a Senator or Representative for the term following the election after the member's current term is completed.**[8]

According to the Yes on Measure 113 campaign, the measure was a response to the increase in legislative walkouts in recent years. The purpose of the measure was to impose "real consequences" when legislators "don't show up to do the job we elected them to do"[9]—a purpose that mirrored arguments in the voters' pamphlet.[10] The official Explanatory Statement also noted that the "[e]lected members from both major political parties have sometimes been

---

[6] Dirk VanderHart, *Oregon Lawmakers Pass Plans for New Political Maps, After Republicans End Boycott*, OPB, Sept. 27, 2021, *available at* https://tinyurl.com/5af8pjrk.

[7] Oregon Secretary of State, November 8, 2022, General Election Abstract of Votes, at 29, available at https://sos.oregon.gov/elections/Documents/results/november-general-2022.pdf.

[8] Official Voters' Pamphlet, General Election, 65 (Nov. 8, 2022) (Marion County version), *available at* https://tinyurl.com/2p9ecm34.

[9] Hold Politicians Accountable (Yes on 113) website (archived July 6, 2022), *available at* https://tinyurl.com/5uawkhuy.

[10] *See, e.g.*, Official Voters' Pamphlet, General Election, Nov. 8, 2022, 66–67 (Marion County version), *available at* https://tinyurl.com/2p9ecm34 (argument submitted by Tan Perkins, Vote Yes On 113) ("[B]y voting YES on Measure 113, we can come together to create real consequences for politicians who want special treatment when they skip work.").

Page 3 -   DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION
BM2/jt3/932074461

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

absent without excuse for various reasons, including to deny this two-thirds requirement known as the quorum."[11]

## B.    The Oregon Legislative Assembly's 2023 Session

### 1.    The Legislative Assembly's Rules

The Oregon Constitution empowers each house to "choose its own officers" and to "determine its own rules of proceeding." Or. Const. art. IV, § 11.  The Rules of the Senate must be adopted, amended, or rescinded by a majority vote of the chamber. Senate Rule § 2.05. On January 9, 2023, the Senate adopted its Rules for the 82nd Legislature Assembly, the first session to convene after the amendment to Article IV, section 15.[12]  In adopting the rules, the Senate addressed its attendance requirement:

> A member shall attend all sessions of the Senate unless excused by the President. A request by a member to be excused from a session shall be in writing. The President shall indicate approval or disapproval of the request in writing. The Journal will record on each roll call all members "present," "excused," or "absent."

*Id*. at § 3.10(1).

Under § 3.10, the President of the Senate, who is elected by a majority of members at the beginning of the session, *id.* at § 7.01(1), must determine whether a proffered excuse for absence from the Senate is approved or disapproved. That determination is then communicated to the Senator. If the Senator does not attend, the Senate Journal records the Senator as "excused" or "absent." *Id*. at § 3.10(1). Like other "questions of order," the President's decision on a request for an excused absence is "subject to appeal by any two members." *Id.* at § 7.10(3); *see also* Paul

---

[11] *Id.* at 66.

[12] *See* Declaration of Anuradha Sawkar, Attach. 2, at 3 (2023 Oregon Senate Journal, Regular Sess.), https://tinyurl.com/26zup75k. The 2023-2024 Senate Rules as adopted may be found at https://tinyurl.com/2by95v3w.

Page 4 -    DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION

Mason, Mason's Legislative Manual § 221(i) (2020) (listing the "[a]ccuracy of the journal and records of the house" as a question of the privilege of the house); *id.* § 240(1) ("The proper method of taking exception to a ruling of a presiding officer is by appeal.").

### 2.    The Senate Walkout

Beginning May 3, 2023, 10 senators (including Senators Linthicum, Boquist, and Hayden) staged a walkout.[13] Because two additional members were also excused that day, the Senate fell two members short of the 20 lawmakers needed for a quorum under Article IV, section 12, of the Oregon Constitution.[14] The walkout was in part spurred by opposition to the Senate's consideration of HB 2002 (a bill focused on reproductive health rights and gender-affirming healthcare) and HB 2005 (a bill focused on gun safety).[15]

Two days after the walkout began, Senate President Robert Wagner announced that requests for excused absences for May 6 onward "would be granted only in 'extraordinary circumstances.'" Sawkar Decl., Attach. 1 (Sarah J. Ryan to Or. S. Comm. on Conduct, *Final Report Regarding Sen. Wagner*, 11 (2023)) [hereinafter *Rule 27 Report*].[16] President Wagner determined this standard was necessary "because the Legislative Assembly was not able to conduct its work without a quorum." *Id.* In particular, lack of quorum threatened the Legislative Assembly's ability to fund state government. *Id.* President Wagner concluded the extraordinary circumstances standard was justified to ensure that the Senate could fulfill its constitutional duty. *Id.* On May 5, President Wagner revised prior approvals of member requests for absences

---

[13] Ben Botkin & Julia Shumway, *Oregon Senate Republicans, Independent stage walkout as divisive bills await votes*, Or. Capital Chronicle (May 3, 2023), https://tinyurl.com/mud65d49. *See also* Sawkar Decl., Attach. 2, *supra* note 12, at 23-24 (Boquist May 3 Protest), 24-25 (Hayden May 3 Protest), 25 (Linthicum May 3 Protest).

[14] Sawkar Decl., Attach. 2, *supra* note 12, at 22.

[15] ECF 4-2 at 19, 20, 21 (Senator Boquist discussing reasons for walkout); ECF 3-1 at 59, 61, 63, 65, 67, 69 (Senator Linthicum discussing reasons for walkout); *Oregon Senate Republicans stage walkout*, KGW (Last updated May 3, 2023, 6:15 PM), https://tinyurl.com/49k58j5k.

[16] *Available at* https://tinyurl.com/36mprtcv.

Page 5 -    DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION
BM2/jt3/932074461

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

beginning on and following May 6, 2023, which included approved absences due to a family event, a garden show, a family member's graduation, and to care for parents. *Id.*[17]

The walkout left the Senate without quorum for six weeks. Most absent senators returned on June 15, after negotiations with legislative leadership.[18]When quorum was restored on June 15, ten senators—including all three Plaintiff Senators—had accrued ten or more unexcused absences.[19]

### 3.    The Plaintiff Senators

Senators Brian Boquist and Dennis Linthicum are each elected Oregon State Senators and plaintiffs in this action.  ECF 1 at 3.  They ask this Court to enjoin their disqualification from serving as legislators in the next term.  ECF 2 at 1.

### a.    Senator Boquist.

Senator Boquist was absent from 34 scheduled Senate floor sessions in 2023. Four of those absences were excused: one for a medical procedure,[20] one to speak to a transportation forum,[21] and two for emergency repairs to a waterline on his rural property.[22] Senator Boquist had 30 unexcused absences, all of which occurred from May 3 to the end of session on June 25.[23]

Senator Boquist does not appear to have submitted a written request to the Senate President for his unexcused absence recorded on May 23.[24] For 20 of Senator Boquist's remaining 29 unexcused absences, the excuse was based solely on his desire to work with

---

[17] Two requests for excused absences from a Democratic Senator were also denied. *See* Sawkar Decl., Attach. 3.

[18] Lauren Dake & Dirk VanderHart, *Oregon Lawmakers Make Deal to End Senate Walkout*, OPB (June 15, 2023), *available at* https://tinyurl.com/ja3pkx3k.

[19] ECF 4-1 at 2.

[20] ECF 4-2 at 1 (March 23).

[21] ECF 4-2 at 2 (April 27).

[22] ECF 4-2 at 16 (June 5); ECF 4-2 at 17 (June 6).

[23] ECF 4-1 at 2 (Secretary of Senate's memorandum).

[24] ECF 4-1 at 2 (Secretary of State recording an unexcused absence for Senator Boquist on May 23); Sawkar Decl., Attach 2, *supra* note 12, at 26-29 (Senator Boquist was marked unexcused on May 23, 2023).

Page 6 -    DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION

constituents in his home district regarding the legislature's allegedly "unlawful actions."[25]

Fourteen of these absences were based on substantively similar requests for leave to work with

constituents regarding alleged "unlawful civil and criminal actions"[26] and "unlawful actions"[27] of

the Senate President and Secretary of the Senate.[28] Six of these absences were based on

substantively similar requests for leave to continue working with constituents regarding "the

continued unlawful unconstitutional actions of the Democrat controlled Senate."[29] All 20

absences are based in part on Senator Boquist's interpretation of Article IV, section 21 of the

Oregon Constitution and ORS 171.134.[30]

      For five of the other nine unexcused absences, Senator Boquist included both protest and

other reasons in his excuse requests.[31] Two other unexcused absences were to attend "a long

scheduled legislative meeting in Eastern Oregon."[32]

---

[25] ECF 4-2 at 6–7 (May 8, May 9); ECF 4-2 at 8 (May 10, May 11); ECF 4-2 at 9 (May 15); ECF 4-2 at 10 (May 16, May 17); ECF 4-2 at 11 (May 18); ECF 4-2 at 13 (May 24, May 25); ECF 4-2 at 14 (May 30, May 31); ECF 4-2 at 15 (June 1, June 2); ECF 4-2 at 19 (June 16); ECF 4-2 at 20 (June 20); ECF 4-2 at 21 (June 21); ECF 4-2 at 22 (June 22); ECF 4-2 at 23 (June 23); ECF 4-2 at 24 (June 24).

[26] ECF 4-2 at 6-7 (May 8, May 9); ECF 4-2 at 8 (May 10, May 11).

[27] ECF 4-2 at 9 (May 15); ECF 4-2 at 10 (May 16, May 17); ECF 4-2 at 11 (May 18); ECF 4-2 at 13 (May 24, May 25); ECF 4-2 at 14 (May 30, May 31); ECF 4-2 at 15 (June 1, June 2).

[28] ECF 4-2 at 6-7 (May 8, May 9), ECF 4-2 at 8 (May 10, May 11), ECF 4-2 at 9 (May 15); ECF 4-2 at 10 (May 16, May 17); ECF 4-2 at 11 (May 18); ECF 4-2 at 13 (May 24, May 25); ECF 4-2 at 14 (May 30, May 31); ECF 4-2 at 15 (June 1, June 2).

[29] ECF 4-2 at 19 (June 16); ECF 4-2 at 20 (June 20); ECF 4-2 at 21 (June 21); ECF 4-2 at 22 (June 22); ECF 4-2 at 23 (June 23); ECF 4-2 at 24 (June 24).

[30] ECF 4-2 at 6, 8 ("Or Const Art IV Sec 21 requires bills be plainly worded. ORS 171.134 establishes wording requirements"); ECF 4-2 at 9, 10, 11, 13, 14, 15 ("Or Const Art IV Sec 21 and ORS 171.134 are admitted violations"); ECF 4-2 at 19, 20, 21, 22, 23, and 24 ("Or Const Art IV Sec 21 and ORS 171.134 continue to be violated").

[31] ECF 4-2 at 3 (requesting absences, in relevant part, on May 3, May 4, May 5, May 6); ECF 4-2 at 12 (May 22). Four of these absences were due to "having the flu[] or worse," awareness that "a member had covid on the floor this week," and protesting "the refusal of the Senate to comply with Senate Rule 13.02 and ORS 171.134." ECF 4-2 at 3-4. One absence was because the Governor had "requested a meeting [that] day at Floor time" and because Senator Boquist was "in district working with district constituents until committee times regarding Or Const Art I Sec 26." ECF 4-2 at 12.

[32] ECF 4-2 at 18 (June 7, June 8).

Page 7 -   DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION

The remaining two unexcused absences were for Sunday, May 7, and Sunday, June 25. For May 7, Senator Boquist submitted two separate requests to be excused. The first request was for a 5-day period ending on May 7 because Senator Boquist had "flu[] or worse."[33] That request was accompanied by an attachment requesting to be excused for a 3-day period ending May 7 because he was "protesting the refusal of the Senate to comply with Senate Rule 13.02 and ORS 171.134."[34] The President denied the first request.[35] The second request was for "internal medical issues" and to allow him to attend mass at his church at the same time as the session was convening.[36] The President denied that request, noting that the "request [was] already denied in previous form."[37] For June 25, Senator Boquist requested an excused absence to attend "Mass two hours away," which the President also denied.[38]

**b. Senator Linthicum.**

Plaintiff Senator Linthicum was absent from 37 scheduled Senate floor sessions in 2023. Five of those absences were excused: one for a medical appointment,[39] two due to inclement weather,[40] one for "personal family obligations,"[41] and one for "personal business" in his district.[42] All 32 of Senator Linthicum's unexcused absences occurred from May 3 to the end of session on June 25.[43]

---

[33] ECF 4-2 at 3.

[34] ECF 4-2 at 4 (May 5, May 6, May 7).

[35] ECF 4-2 at 3.

[36] ECF 4-2 at 5 (May 7).

[37] *Id.*

[38] ECF 4-2 at 25 (June 25).

[39] ECF 3-1 at 1 (Jan. 19).

[40] ECF 3-1 at 2 (Feb. 22), ECF 3-1 at 3 (Feb. 23).

[41] ECF 3-1 at 4 (Apr. 13).

[42] ECF 3-1 at 5 (Apr. 27).

[43] ECF 4-1 at 2 (Secretary of Senate's memorandum).

Page 8 -   DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION

For 14[44] of the 32 unexcused absences, Senator Linthicum requested an excuse either based solely for the reason of "protesting" the Senate's alleged "refusal to comply" with various Senate rules and statutory provisions[45] or solely for leave to "work with constituents" regarding "the continued, unlawful unconstitutional actions of the Democrat controlled Senate."[46] All 14 of these unexcused absences are based in part on Senator Linthicum's interpretation of Article IV, section 21 of the Oregon Constitution and ORS 171.134.[47]

For 10 of the 18 other unexcused absences, Senator Linthicum requested an excuse based on both health reasons and "protesting." For five of those absences, Senator Linthicum based his requests on chronic health issues related to hypertension and diabetes as well as "protesting."[48]

---

[44] ECF 3-1 at 6-7 (May 3); ECF 3-1 at 29-30 (May 23); ECF 3-1 at 31-32 (May 24); ECF 3-1 at 33-34 (May 25); ECF 3-1 at 35-36 (May 30); ECF 3-1 at 37-38 (May 31); ECF 3-1 at 39-40 (June 1); ECF 3-1 at 53-54 (June 15); ECF 3-1 at 58-59 (June 20); ECF 3-1 at 60-61 (June 21); ECF 3-1 at 62-63 (June 22); ECF 3-1 at 64-65 (June 23); ECF 3-1 at 66-67 (June 24); ECF 3-1 68-69 (June 25).

[45] ECF 3-1 at 6-7 (May 3), ECF 3-1 at 29-30 (May 23); ECF 3-1 at 31-32 (May 24); ECF 3-1 at 33-34 (May 25); ECF 3-1 at 35-36 (May 30); ECF 3-1 at 37-38 (May 31); ECF 3-1 at 39-40 (June 1); ECF 3-1 at 53-54 (June 15). These eight requests are substantively similar and are based in part on "protesting the refusal of the Senate to comply with Senate Rule 13.02 and ORS 171.134." ECF 3-1 at 7, 30, 32, 34, 36, 38, 40, and 54.

[46] ECF 3-1 at 58-59 (June 20); ECF 3-1 at 60-61 (June 21); ECF 3-1 at 62-63 (June 22); ECF 3-1 at 64-65 (June 23); ECF 3-1 at 66-67 (June 24); ECF 3-1 68-69 (June 25). Apart from Senator Linthicum's statement that he "[w]ill watch for one-hour committee notices" in the attachment to his request for leave on June 20, the attachments submitted with the leave forms for June 20 and June 21 are nearly identical. *Compare* ECF 3-1 at 59 (June 20) *to* ECF 3-1 at 61 (June 21). Senator Linthicum's forms submit identical attachments for absences requested from June 22 to June 25. ECF 3-1 at 63 (June 22), 65 (June 23), 67 (June 24), and 69 (June 25).

[47] ECF 3-1 at 7, 30, 32, 34, 36, 38, 40, and 54 (referencing, at various points, ORS 171.134 and Article IV section 21); ECF 3-1 at 59, 61, 63, 65, 67, and 69 ("Or Const Art IV Sec 21 and ORS 171.134 continue to be violated").

[48] ECF 3-1 at 15 (May 15), ECF 3-1 at 16-17 (May 15); ECF 3-1 at 18-19 (May 16), ECF 3-1 at 20 (May 16); ECF 3-1 at 21 (May 17), ECF 3-1 at 22-23 (May 17); ECF 3-1 at 24 (May 18), ECF 3-1 at 25-26 (May 18); ECF 3-1 at 27-28 (May 22). Four of these unexcused absences were based in part on either "[c]omplications related to [d]iabetes and [h]ypertension" or "ongoing issues with health" *and* Senator Linthicum's belief that Senate Rule 3.10 compelled President Wagner to excuse his absence for "protesting the refusal of the Senate to comply with Senate Rule 13.02 and ORS 171.134." *See* ECF 3-1 at 15 (May 15), ECF 3-1 at 20 (May 16), (discussing "complications" and "protesting"). *See* ECF 3-1 at 21 (May 17), ECF 3-1 at 24 (May 18), (discussing "ongoing issues" and "protesting"). For each of these four absences, Senator Linthicum submitted four additional requests accompanied by identical attachments again

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Five other excuse requests were for cold and flu related reasons[49] or "obligations on [his] ranch combined with [the five] hour drive time to get to Salem"[50] as well as "protesting the refusal of the Senate to comply with Senate Rule 13.02 and ORS 171.134."[51]

Seven of the unexcused absences involve multiple overlapping requests based solely on ongoing health issues.[52]

The remaining unexcused absence was for Sunday, May 7. For May 7, Senator Linthicum submitted three separate requests to be excused. Two of these requests were for several days of leave between May 4 to May 22 and between May 5 to May 7, respectively, for diabetes and hypertension related issues.[53] On a third form dated May 5, Senator Linthicum requested an excused absence for Sunday, May 7, and Sunday, May 14 to attend "religious faith services."[54] President Wagner did not mark Senator Linthicum's May 5 form, explaining that a request for an excused absence was addressed in a "separate request,"[55] a request based only on Senator

---

explaining that he was "protesting the refusal of the Senate to comply with Senate Rule 13.02 and ORS 171.134." ECF 3-1 at 16-17 (May 15); ECF 3-1 at 18-19 (May 16); ECF 3-1 at 22-23 (May 17); ECF 3-1 at 25-26 (May 18). The last of these five unexcused absences was initially based on hypertension and diabetes related issues and later for "protesting the refusal of the Senate to comply with Senate Rule 13.02 and ORS 171.134." ECF 3-1 at 8 (requesting, in relevant part, on May 22); ECF 3-1 at 11 (same); ECF 3-1 at 12 (same); ECF 3-1 at 13 (same); ECF 3-1 at 27-28 (May 22).

[49] ECF 3-1 at 43 (June 5); ECF 3-1 at 44 (June 6); ECF 3-1 at 47 (June 7); ECF 3-1 at 50 (June 8).

[50] ECF 3-1 at 57 (June 16).

[51] ECF 3-1 at 41-42 (June 5); ECF 3-1 at 45-46 (June 6); ECF 3-1 at 48-49 (June 7); ECF 3-1 at 51-52 (June 8); ECF 3-1 at 55-56 (June 16).

[52] ECF 3-1 at 8 (requesting absences, in relevant part, on May 4, May 5, May 6, May 8, May 9, May 10, and May 11); ECF 3-1 at 9 (requesting absences, in relevant part, on May 5 and May 6); ECF 3-1 at 11 (requesting absences, in relevant part on May 8, May 9, May 10, and May 11); ECF 3-1 at 12 (requesting absences, in relevant part on May 9, May 10, and May 11); ECF 3-1 at 13 (requesting absences, in relevant part, on May 10 and May 11); ECF 3-1 at 14 (May 11).

[53] ECF 3-1 at 8 (May 4 to May 22); ECF 3-1 at 9 (May 5 to May 7).

[54] ECF 3-1 at 10 (May 7, May 14). The Senate was not scheduled to be in session on Sunday, May 14, 2023.

[55] *Id.*

Page 10 -  DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Linthicum "protesting the refusal of the Senate to comply with Senate Rule 13.02 and ORS

171.134," which President Wagner did not excuse.[56]

### 4. The Secretary's Determination

Under Oregon law, if the Secretary of State determines that a "candidate will not qualify

in time for the office if elected, the name of the candidate may not be printed on the ballots."

ORS 254.165(1); *see also State ex rel Kristof v. Fagan*, 369 Or. 261, 277 (2022) (holding "the

secretary [has] the responsibility of determining, in the first instance, whether a prospective

candidate is qualified to appear on the ballot."); ECF 4-5 at 1 (opinion of Oregon DOJ General

Counsel) (so opining for Measure 113).

The Secretary of the Senate provided the Secretary of State's Elections Division staff a

memorandum documenting the "unexcused absences recorded for senators during the 2023

Regular Session."[57] In reliance on that memorandum, the Secretary of State determined that

Senators Boquist and Linthicum did "not qualify to appear on the ballot" for Oregon Senate in

the 2024 primary election under Article IV, section 15, of the Oregon Constitution.[58]

### C. Pending Litigation

### 1. The State Court Litigation

Five state senators who accrued 10 or more unexcused absences in the 2023 session,

including Senator Linthicum, filed a state court petition on August 25 challenging an

administrative rule promulgated by the Secretary of State. That rule interprets Measure 113 as

barring disqualified legislators from their immediate next term of office. The petition argues that

the Secretary of State's rule is invalid "[b]ecause Petitioners' terms are completed on January 14,

2025, or January 14, 2027, and because the 'election after the member's current term is

completed' will not take place until November 2028 and November 2030, if Petitioners are to be

---

[56] ECF 3-1 at 6–7.

[57] ECF 4-1.

[58] ECF 3-2; ECF 4-3; *see also* ECF 3-3 (declining reconsideration); ECF 4-4 (same).

BM2/jt3/932074461

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

disqualified from serving in the Senate, any such disqualification would be for the terms beginning on or after January 2029 and January 2031." In other words, the state court litigation focuses on the timing of Measure 113's disqualification provision under state law. The petitioners do not assert the federal law claims at issue in this case.

The petition was originally filed as a rule challenge in the Oregon Court of Appeals. The Oregon Supreme Court accepted a certification of that appeal on October 24. The Oregon Supreme Court is scheduled to hear oral argument on December 14. *See Knopp v. Griffin-Valade*, No. S070456 (Or.).

### 2.    This Federal Case

Nine plaintiffs—three state senators, one voter in each of their districts, and a county political party in each of their districts—filed this action against the Senate President and the Secretary of State. ECF 1. The complaint asserts five claims: (1) a retaliation claim under the First Amendment, (2) a freedom of association claim under the First Amendment, (3) a free exercise claim under the First Amendment, (4) a due process claim, and (5) an equal protection claim.

The motion for a preliminary injunction focuses on only one claim—the First Amendment retaliation claim—with respect to the two Plaintiff Senators whose districts have elections in 2024, Senators Boquist and Linthicum. ECF 2. The motion seeks an order requiring the Secretary of State to place Senators Boquist and Linthicum on the 2024 ballot despite the Oregon Constitution disqualifying them from reelection. *Id.* at 2.

### III.    LEGAL STANDARDS

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (emphasis in original). To obtain a preliminary injunction, plaintiffs must establish that "(1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities

Page 12 -  DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION

tips in their favor; and (4) an injunction is in the public interest." *Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018) (citing *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008)). When the government is a party, courts consider the last two factors together, because the defendants' equities merge with the public interest. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). A plaintiff must establish each of the elements. *Winter*, 555 U.S. at 20–21.

"[S]erious questions going to the merits" combined with a balance of hardships that tips sharply towards the plaintiff can satisfy those two factors together, so long as the plaintiff also shows that there is a likelihood of irreparable injury. *See All. For the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Because the balance of equities and public interest are considered together, the *Alliance* balancing test requires a plaintiff to show that its claim raises serious constitutional questions and that the balance of equities tips sharply in its favor—that is, that their irreparable injury greatly exceeds the public interest served by the law.

"[T]he rules of evidence do not apply strictly to preliminary injunction proceedings." *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 n.5 (9th Cir. 2013).

## IV.    ARGUMENT

### A.    Plaintiffs Are Unlikely to Succeed on the Merits of Their First Amendment Retaliation Claims.

The First Amendment prohibits laws "abridging the freedom of speech."  U.S. Const. amend. I.  As a result, the "'government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" *Ashcroft v. American Civil Liberties Union*, 535 U.S. 564, 573 (2002) (quoting *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 65 (1983)).  "But the Amendment has no application when what is restricted is not protected speech."  *Nevada Commission on Ethics v. Carrigan*, 564 U.S. 117, 121 (2011) (citing *Roth v. United States*, 354 U.S. 476, 483 (1957)).

The person asserting First Amendment protection has the burden of proving that the activity at issue is protected expression. *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 n.5 (1984). A long-established prohibition on certain conduct creates a strong presumption

Page 13 -  DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION

that the prohibition is constitutional. *Carrigan*, 564 U.S. at 122; *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 474 (2022).

> **1.      The Oregon Constitution's Disqualification of Absent Legislators Does Not Implicate the First Amendment.**

The Motion suggests briefly that the Oregon Constitution's disqualification of legislators for excessive absences itself violates the Plaintiffs' First Amendment associational rights. ECF 2 at 4.  That claim is meritless.

The right to run for public office is not a fundamental right. *Clements v. Fashing*, 457 U.S. 957, 963 (1982) (plurality opinion) (observing that there is no fundamental right to candidacy or officeholding); *see id.* at 975 (Stevens, J., concurring in part and concurring in judgment) (agreeing that a Texas law making ineligible from the state legislature a set of officeholders already in office does not violate equal protection or trigger heightened scrutiny); *Bullock v. Carter*, 405 U.S. 134, 143 (1972) (explaining that a restriction that limits the field of candidates from which voters can choose "does not of itself compel close scrutiny"); *Clayton v. Kiffmeyer*, 688 N.W.2d 117, 127 (Minn. 2004) (observing that the United States Supreme Court had not recognized the right to candidacy as a fundamental right).

The Ninth Circuit has applied the *Anderson-Burdick* standard to determine the constitutionality of qualifications for public office. Under that standard, a court:

> must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights."

*Bates v. Jones*, 131 F.3d 843, 846 (9th Cir. 1997) (en banc) (quoting *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (quoting *Anderson v. Celebrezze,* 460 U.S. 780, 789 (1983)). This standard applies regardless of whether Plaintiffs assert their claims under the First Amendment or the Fourteenth Amendment. *See Dudum v. Arntz*, 640 F.3d 1098, 1106 n.15 (9th Cir. 2011) (voting rights claims are "addressed … using a single analytic framework").

Page 14 -  DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Applying that standard, the state's interest in requiring legislators' attendance far outweighs the modest burden on legislators to remain eligible for reelection. Disqualification for unexcused absences is no more burdensome than other neutral eligibility requirements and restrictions on state officeholders—such as term limits, age restrictions, and residency requirements—which "the State certainly has the right to impose." *Bates*, 131 F.3d at 847 (rejecting First and Fourteenth Amendment challenge to lifetime term limits). Indeed, this requirement for office is less burdensome than those requirements the courts have already upheld. A legislator has no constitutional right to be absent from the legislature. *See* § IV.A.2.a, below. To remain eligible for reelection, a legislator must only choose to be absent without excuse nine or fewer times from each session. So long as they are present, they may protest the legislature's actions however they please, including by speaking on the floor or entering their protest in the Senate journal. And unlike lifetime term limits, which *Bates* upheld, this disqualification expires after a single term.

On the other hand, the State's interest in ensuring legislators' attendance, and thus maintaining a legislative quorum, is profound. Without a quorum, the State's legislature cannot function. *See Keefe v. Roberts*, 116 N.H. 195, 199 (1976) ("The right of a legislative body to have the attendance of all its members and to enforce such attendance, if necessary, is one of its most undoubted and important functions."); Mason's Legislative Manual § 190(4) ("The absence of the power of a house of a state legislature to compel the attendance of all members at all times would destroy its ability to function as a legislative body."); 1 Joseph Story, *Commentaries on the Constitution* § 836 (5th ed. 1891) (noting that the Compulsion-of-Attendance Clause ensures that "the interests of the nation and the d[i]spatch of business are not subject to the caprice or perversity or negligence of the minority").

The qualification serves a legitimate state interest in encouraging the legislature to operate with a quorum, and its burden on potential candidates is modest. Thus, it withstands constitutional scrutiny.

Page 15 -  DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION

**2.    The Senate's Decision Not to Excuse the Plaintiff Senators' Absences Does Not Violate the First Amendment.**

Plaintiffs' motion is principally based on only one of their five claims: that two Plaintiff Senators' disqualification from reelection based on their unexcused absences is unlawful retaliation that violates the First Amendment. A plaintiff asserting a First Amendment retaliation claim has the burden to demonstrate "'(1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action.'" *Boquist v. Courtney*, 32 F.4th 764, 775 (9th Cir. 2022) (quoting *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010)).

Here, there is no dispute that the Senators' disqualification was triggered by their unexcused absence from the Senate. The Senators cannot show that their absence from the Senate was "constitutionally protected activity." In any event, their challenge to the Senate's and its President's decision not to excuse their absence is foreclosed by legislative immunity. Plaintiffs' challenge is therefore unlikely to succeed.

**a.    The First Amendment Does Not Require the Senate to Excuse Absences to Facilitate Senators' Denial of a Quorum.**

Even if Plaintiffs' First Amendment claim were justiciable, it would be meritless. Legislators have "no right to use official powers for expressive purposes." *Carrigan*, 564 U.S. at 126. Courts have rejected First Amendment claims made by public officials who "use governmental mechanics to convey a message" and that serve "an independent governmental purpose" apart from sending whatever message the official intends to convey. *Id.*

In *Carrigan*, the U.S. Supreme Court held that a legislator's vote is not protected by the First Amendment. For that reason, a state ethics commission's censure of a city councilor when he voted on a measure, allegedly violating a conflict-of-interest policy, raised no First Amendment issue because it did not implicate protected conduct. The Court reasoned that legislators "ha[ve] no personal right" under the First Amendment regarding their performance of

Page 16 -  DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION

legislative duties because those functions are part of the legislative power, which "belongs to the people." *Carrigan*, 564 U.S. at 126. Thus, the First Amendment did not protect the city councilor's act of voting.

The First Amendment does not protect legislators' refusal to attend legislative floor sessions. Under Oregon law, a senator's absence has an important legal effect: without the attendance of the two-thirds of senators needed to achieve a quorum, the Senate cannot legislate. *See* Or. Const., art. IV, § 12 ("Two thirds of each house shall constitute a quorum to do business"). Because a Senator has no First Amendment right to "use governmental mechanics to convey a message," remaining absent from legislative sessions is not entitled to First Amendment protection.

Because legislators' attendance is essential to the Legislative Branch's operation, the Oregon Constitution has authorized each chamber to compel the attendance of absent members since the State's founding. Or. Const., art. IV, § 12 (upon absence of a quorum, "a smaller number may meet; adjourn from day to day, and compel the attendance of absent members"). The U.S. Constitution has also always authorized each chamber "to compel the Attendance of absent Members, in such Manner, and under such Penalties as each House may provide." U.S. Const., art. I, § 5.

A legislature's authority to compel attendance is constitutionally permissible. *See Schultz v. Sundberg*, 759 F.2d 714, 716–17 (9th Cir. 1985) (holding Alaska Senate President "had the authority to compel the attendance of absent legislators," including by directing the sergeant-at-arms to escort legislators to the chamber "after a minimal show of force"). Indeed, the U.S. Supreme Court has recognized that Congress may imprison members to compel their attendance. *Kilbourn v. Thompson*, 103 U.S. 168, 190 (1880) ("the penalty which each House is authorized to inflict in order to compel the attendance of absent members may be imprisonment, and this may be for a violation of some order or standing rule on that subject."); *accord In re Abbott*, 628 S.W.3d 288, 292–93 (Tex. 2021) ("the prevailing historical understanding in Texas has been that

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

physical restraint of absent members of the legislature to 'compel the[ir] attendance' is a valid exercise of the quorum-forcing authority granted to each chamber"); *Berry v. Crawford*, 990 N.E.2d 410, 419 (Ind. 2013) ("the Constitution provides for a mechanism to compel attendance of absent members").

These cases foreclose an essential predicate of Plaintiffs' theory: that the First Amendment protects their decisions to walk-out of legislative proceedings. The Supreme Court and, more recently, the Ninth Circuit have held that *imprisonment* is a permissible sanction for a legislator's absence from the legislature. That conclusion cannot be squared with Plaintiffs' argument that the federal Constitution protects their decision to be absent from legislative proceedings, as the Texas Supreme Court recently explained:

> All of Plaintiffs' arguments premised on the federal constitution are foreclosed by the U.S. Supreme Court's interpretation of Congress's quorum-forcing authority [in *Kilbourn*]. Plaintiffs acknowledge that federal case law upholds Congress's authority to physically compel members' attendance. … [I]f the federal constitution permits Congress to use physical compulsion against absent members of Congress, we fail to see how it could possibly prohibit the Texas Legislature from doing so under a provision of the Texas Constitution that closely mirrors its federal counterpart.

*In re Abbott*, 628 S.W.3d at 296–97.

Plaintiffs cite *Boquist v. Courtney* for the proposition that "[a] legislative walk-out is a form of political speech." ECF 2 at 5 (citing 32 F.4th 764, 772 (9th Cir. 2022)). But that case held only that "Boquist's *rhetorical response* to the majority's threat to use state police to arrest the departing senators and return them to the Capitol," as alleged in his complaint, was protected speech. *Boquist*, 32 F.4th at 780 (emphasis added). That case held that the plaintiff had plead a prima facie claim for retaliation in response to the plaintiff's *speech*; it did not address the walkout itself. The court ruled, on a motion to dismiss, that "[t]aking the allegations in Boquist's complaint as true, and drawing all reasonable inferences in Boquist's favor, [it] cannot say that Boquist's *statements* were a 'serious expression of an intent to commit an act of unlawful violence' against Courtney or the state police." *Id.* at 782 (emphasis added). By contrast, the

Plaintiff Senators argue here that the First Amendment entitles them not to attend legislative floor sessions, not simply to speak. There is no First Amendment protection for that conduct. And, unlike this case, the Ninth Circuit's decision in *Boquist* preceded defendants' invocation of legislative immunity.

### b. The Plaintiff Senators Accrued More Than 10 Absences for the Walkout Only, so Absences for Other Reasons are Immaterial.

As demonstrated above, Plaintiffs cannot establish the first element of a First Amendment retaliation claim, because a legislator's refusal to attend legislative sessions is not protected under the First Amendment.  Thus, denial of requests based on that excuse does not violate the Plaintiff Senators' First Amendment rights.

The Plaintiff Senators' other stated reasons for their unexcused absences are immaterial because they were not the "but-for cause" of either senator's disqualification from the ballot. "If there is a finding that retaliation was not the but-for cause of the [adverse action], the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind." *Boquist*, 32 F.4th at 778 (citing *Hartman v. Moore*, 547 US 250, 260 (2006)). "Conversely, if the government officials would have taken the same adverse action even in the absence of their animus or retaliatory motive arising from the plaintiff's speech, then the officials' animus was not a but-for cause of the adverse action, and there was no violation of the plaintiff's constitutional rights." *Id.*

The threshold for disqualification under Article IV, section 15 of the Oregon Constitution as amended is failure to attend, absent permission or excuse, ten or more legislative floor sessions. On 20 separate days, Senator Boquist requested excused absences solely for the reason of engaging in "protest" of various purported violations of senate rules, ORS 171.134, state whistleblower protection laws, and various provisions of the state constitution, which President Wagner did "not approve[]."[59] On 14 separate days, Senator Linthicum requested excused

---

[59] *See* § II.B.3.a at notes 25–30 & accompanying text.

Page 19 -  DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION
BM2/jt3/932074461

absences solely for the reason of engaging in "protest" on the same issues, which President Wagner did "not approve[]."[60] Because the Plaintiff Senators accrued 10 or more unexcused absences solely based on their refusal to attend mandatory Senate sessions, the denial of their requests for excused absences based on other (or multiple) reasons is immaterial to their disqualification and cannot form the basis of their retaliation claim.

### c. Legislative Immunity Bars Plaintiffs' Challenge to the Senate's Decision Not to Excuse Their Absences.

The federal courts have long recognized that state legislators are absolutely immune from civil suit for conduct falling within "the sphere of legitimate legislative activity." *Tenney v. Brandhove*, 341 U.S. 367, 376–77 (1951). Legislative immunity "provides legislators with the breathing room necessary to make these choices in the public's interest." *E.E.O.C. v. Washington Suburban Sanitary Comm'n*, 631 F.3d 174, 181 (4th Cir. 2011). "To preserve legislative independence, [the Supreme Court] ha[s] concluded that legislators engaged in the sphere of legitimate legislative activity should be protected not only from the consequences of litigation's results but also from the burden of defending themselves." *Supreme Ct. of Virginia v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 732 (1980) (internal quotation marks and citations omitted). Accordingly, a civil suit may not be premised on a state legislator's legislative acts. *See Chappell v. Robbins*, 73 F.3d 918, 921 (9th Cir. 1996) ("Plaintiff could not state a claim upon which relief could be granted because the conduct . . . [that] proximately caused his injury was legislative, and therefore immune."); *Thillens, Inc. v. Cmty. Currency Exch. Ass'n of Ill., Inc.*, 729 F.2d 1128, 1131 (7th Cir.), *cert. dismissed sub nom. Thillens, Inc. v. Wall*, 469 U.S. 976 (1984) (legislative immunity barred a civil suit that required "proof of a legislative act or the motives or purposes underlying such an act"; "[Legislative] immunity was designed to prevent a plaintiff from using a civil action to peer so deeply into the legislative process.").

---

[60] *See* § II.B.3.b at notes 44–47 & accompanying text.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

State legislators' "absolute" common-law immunity against civil suits for their legislative acts is "parallel to the immunity provided by the Speech or Debate Clause'" for members of Congress. *San Pedro Hotel Co. v. City of Los Angeles*, 159 F.3d 470, 476 (9th Cir. 1998) (quoting *Chappell*, 73 F.3d at 920); *see also Bogan v. Scott-Harris*, 523 U.S. 44, 48–49 (1998) ("The Federal Constitution, the Constitutions of many of the newly independent States, and the common law thus protected legislators from liability for their legislative activities.").[61] Despite the varied source of the immunity, the courts "generally have equated the legislative immunity to which state legislators are entitled under § 1983 to that accorded Congressmen under the Constitution." *Supreme Ct. of Virginia*, 446 U.S. at 732; *accord In re North Dakota Legislative Assembly*, 70 F.4th 460, 463 (8th Cir. 2023) (quoting *Reeder v. Madigan*, 780 F.3d 799, 805 (7th Cir. 2015)) ("In civil litigation, there is no reason to conclude that state legislators and their aides are 'entitled to lesser protection than their peers in Washington.'"). State legislators' absolute immunity from suit under § 1983 applies to actions for damages as well as actions for prospective relief. *Supreme Ct. of Virginia*, 446 U.S. at 732–33.

Whether an act is legislative depends on the nature of the act and not on the motive or intent of the official in carrying it out. *Chappell*, 73 F.3d at 921. "It simply is 'not consonant with our scheme of government for a court to inquire into the motives of legislators.'" *Bogan*, 523 U.S. at 55 (quoting *Tenney*, 341 U.S. at 377). The Ninth Circuit looks to four factors when determining when conduct falls within the sphere of legislative activity: whether the act (1) involves "'ad hoc decision making or the formulation of policy;'" (2) applies to some individuals or to the public; (3) is formally legislative; and (4) bears "'hallmarks of traditional legislation.'" *Kaahumanu v. Co. of Maui*, 315 F.3d 1215, 1220 (9th Cir. 2003) (citing and quoting from *San Pedro Hotel*, 159 F.3d at 476 and *Bogan*, 523 U.S. at 55). All factors need not be present for a legislator to be immune. *Id.*; *see also Hernandez v. Oregon House of Representatives*, No. 6:21-

---

[61] The Oregon Supreme Court has recognized legislative immunity under the Oregon Constitution's debate clause. *See State v. Babson,* 355 Or. 383, 422–23 (2014).

BM2/jt3/932074461

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

CV-00238-AA, 2021 WL 5570112, at *6 (D. Or. Nov. 29, 2021) ("The final two factors weigh heavily in favor of legislative immunity….").

The immunity applies to all actions taken by a legislator that are an "integral part of the deliberative and communicative processes … with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House." *Gravel v. United States*, 408 U.S. 606, 625 (1972). The immunity applies to acts outside of debating or voting on legislation. *See id.* It includes anything "'generally done in a session of the House by one of its members in relation to the business before it.'" *Doe v. McMillan*, 412 U.S. 306, 311–12 (1973) (quoting *Kilbourn v. Thompson*, 103 U.S. 168, 204 (1881)). The immunity includes enforcing rules "validly enacted under authority specifically granted to the Congress and within the scope of authority appropriately delegated by it." *Consumers Union of U. S., Inc. v. Periodical Correspondents' Ass'n*, 515 F.2d 1341, 1350–51 (D.C. Cir. 1975) (applying immunity to decision to reject application by media entity for access to a press gallery); *see also Nat'l Ass'n of Soc. Workers v. Harwood*, 69 F.3d 622, 631 (1st Cir. 1995) ("Where, as here, a legislative body adopts a rule, not invidiously discriminatory on its face, that bears upon its conduct of frankly legislative business, we think that the doctrine of legislative immunity must protect legislators and legislative aides who do no more than carry out the will of the body by enforcing the rule as a part of their official duties." (internal citations omitted)). Grant of immunity is not limited to members of the legislature, but also applies to those designated to perform legislative functions. *See Jones v. Allison*, 9 F.4th 1136, 1139–40 (9th Cir. 2021).

Article IV, § 15 of the Oregon Constitution empowers each house to "punish its members for disorderly behavior." Or. Const. art. IV, § 15. After the adoption of Measure 113, this provision specifically defines "disorderly behavior" as failing "to attend, without permission or excuse, ten or more legislative floor sessions called to transact business during a regular or special legislative session" *Id.* The new provision then prescribes the punishment for such

Page 22 -  DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION

behavior by disqualifying the offending legislator from holding office. *Id.* To effectuate the

power placed within the jurisdiction of the legislature by the Oregon Constitution, the Senate

promulgates rules, including those regarding absences during a session.

President Wagner is entitled to absolute immunity because he is carrying out the

functions granted to him under the Senate Rules. *See Consumers Union of U. S., Inc.*, 515 F.2d at

1350. The Senate President is charged with enforcing the internal rules of the Senate that were

enacted under authority specifically delegated to both houses by the Oregon Constitution. The

rule, and the President's function under the rule, serve an integral part of the legislative process,

namely ensuring members attend sessions to participate in debate and sufficient numbers are

present to maintain a quorum. The Rule itself satisfies most of the factors set forth by the Ninth

Circuit for consideration. It was adopted by majority vote of the Senate as a whole after

consideration and debate and therefore bears the marks of traditional legislation. While the rule

does not govern the public at large, it does govern every member of the Senate.

Most importantly, a legislature's discipline of its own members is formally legislative

and part of the legislature's traditional activities. Thus, as other circuit courts have held,

legislative discipline is necessarily "protected by absolute legislative immunity." *Whitener v.

McWatters*, 112 F.3d 740, 745 (4th Cir. 1997) (holding county board's discipline of a member

immune from First Amendment claim); *accord Rangel v. Boehner*, 785 F.3d 19, 23 (D.C. Cir.

2015) (holding that a "congressional disciplinary proceeding [is] a 'legislative' matter that 'the

Constitution places within the jurisdiction of [the] House'"); *Gamrat v. McBroom*, 822 F. App'x

331, 334 (6th Cir. 2020) ("The [Michigan] House's expulsion of Gamrat was legislative activity,

regardless of any bad faith, and Gamrat cannot sue the House Defendants for participating in that

process."). This Court has come to the same conclusion. *See Hernandez v. Oregon House of

Representatives*, No. 6:21-CV-00238-AA, 2021 WL 5570112, at *7 (D. Or. Nov. 29, 2021)

(holding "the process for expelling a member of the Oregon Legislature … [is] legislative in

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

character and so Fahey, Noble, and Kotek are entitled to absolute immunity."). Therefore, the Senate's and its President's application of the rule is entitled to legislative immunity.

*Whitener* rejected claims, like those asserted here, that legislative discipline violated the plaintiff's free speech. 112 F.3d at 741. The plaintiff, a member of a municipal board, was disciplined for abusive language made while expressing frustration to fellow board members concerning a recent vote. *Id*. The board disciplined the plaintiff with a censure and stripped him of his committee assignments. *Id*. The Fourth Circuit held that "a legislative body's discipline of one of its members is a core legislative act." *Id*. The court reasoned that while legislative speech and voting are protected by absolute immunity, "the exercise of self-disciplinary power is likewise protected." *Id.* at 744. The court rejected the argument that free speech claims should be excepted from legislative immunity. *Id.* The Senate's and its President's application of the rule is entitled to legislative immunity for the same reason: excusing or not excusing an absence is a core part of the body's discipline of its own members.

Adjudicating Plaintiffs' retaliation claim would require the Court to examine not only the outcome of the President's decision to mark absences unexcused, but the motivations underlying each decision. Legislative immunity is rooted in the separation of powers. "[T]he privilege was not born primarily of a desire to avoid private suits such as those in *Kilbourn* and *Tenney*, but rather to prevent intimidation by the executive and accountability before a possibly hostile judiciary." *United States v. Johnson*, 383 U.S. 169, 180–81 (1966); *see Chappell v. Robbins*, 73 F.3d 918, 921 (9th Cir. 1996) ("The immunity serves a prophylactic function central to the proper functioning of a democratic government, making representatives answerable to the entire electorate rather than a select few."). Plaintiffs' retaliation claim requires a judicial inquiry into the motives behind legislative action. Plaintiffs complain President Wagner marked their absences unexcused as an improper retaliation to speech. This inquiry is the entanglement that legislative immunity seeks to prevent. "In times of political passion, dishonest or vindictive

Page 24 - DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION
BM2/jt3/932074461

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

motives are readily attributed to legislative conduct and as readily believed. Courts are not the place for such controversies." *Tenney*, 341 U.S. at 378; *see also Chappell*, 73 F.3d at 921.

President Wagner's implementation of the Senate's rules regarding absences falls within the scope of the Senate's authority granted by the Oregon Constitution to promulgate its own rules and discipline its own members, specifically those who fail to attend senate sessions without permission or excuse. Like in *Whitener*, President Wagner is engaged in the "core legislative act" of disciplining members, in this case for failing to attend the session. 112 F.3d at 741. Rules regarding absences fall within the scope of the Senate's authority granted by the Oregon Constitution to promulgate its own rules and discipline its own members, specifically those who fail to attend Senate sessions without permission or excuse. President Wagner's decisions are, therefore, protected from challenge in federal court by the doctrine of legislative immunity.

Plaintiffs cannot avoid legislative immunity by simply naming a defendant who is not a legislator. The Secretary of State relies entirely on the legislature's determination regarding its members' absences. Any claim against the Secretary for retaliation must rely on the same impermissible inquiry into the motives of the President exercising his legislative functions. Plaintiffs cannot avoid legislative immunity by simply naming a different defendant. *See, e.g.*, *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (holding "officials outside the legislative branch are entitled to legislative immunity" under certain circumstances); *Schlitz v. Com. of Va.*, 854 F.2d 43, 46 (4th Cir. 1988)[62] ("[W]e reject plaintiff's argument that he can circumvent the doctrine of legislative immunity by declining to name as defendants individual legislators.") (citing *Gravel*, 408 U.S. at 616). Because Plaintiffs' claim hinges on the actions and motives of the legislature, legislative immunity bars the claim against all Defendants.

---

[62] *Schlitz* was overruled on other grounds by *Berkley v. Common Council of City of Charleston*, 63 F.3d 295 (4th Cir. 1995).

Page 25 -  DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION

B.      **The Balance of the Equities Disfavors a Preliminary Injunction**

1.      **Plaintiffs have not shown irreparable harm.**

Plaintiffs argue they have shown irreparable harm because enforcing the Oregon Constitution's disqualification infringes their First Amendment rights. ECF 2 at 7. The "standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction …." *See Winter*, 555 U.S. at 22 (emphasis original). An injury based on a plaintiff's loss of constitutional rights requires the plaintiff to establish it is likely to succeed on its constitutional claim. *See Associated Gen. Contractors of Cal., Inc. v. Coal. For Econ. Equity*, 950 F.2d 1401, 1412 (9th Cir. 1991); *San Francisco Veteran Police Officers Ass'n v. City & Cnty. of San Francisco*, 18 F. Supp. 3d 997, 1006 (N.D. Cal. 2014) ("'serious questions' do not translate to a violation severe enough to trigger a presumption of irreparable harm"). For the reasons explained in Section IV.A, above, Plaintiffs have not made that showing. Because Plaintiffs do not show that irreparable harm is likely (here, by showing their constitutional rights would be violated in the absence of an injunction), the Court cannot issue a preliminary injunction.

2.      **The balance of equities disfavors an injunction.**

To prevail on a preliminary injunction, a plaintiff must also show "the balance of equities tips in [its] favor; and … an injunction is in the public interest." *Short*, 893 F.3d at 675. Because state officials are parties, these factors merge. *See Nken*, 556 U.S. at 435. The balance of the equities and the public interest disfavor an injunction.

"[A] state suffers irreparable injury whenever an enactment of its people or their representatives is enjoined." *Video Gaming Techs., Inc. v. Bureau of Gambling Control*, 356 F. App'x 89, 92 (9th Cir. 2009) (quoting *Coal. for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997)); *accord Maryland v. King*, 567 U.S. 1301 (2012) (Roberts, Circuit Justice). Here, the temporary basis of the injunction would only exacerbate the harm to the public interest. "Placing a party's name on the ballot is a form of representation to the voters that, insofar as can then be known, the candidate, if elected, will be able to qualify for the Full term of the office."

Page 26 -  DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION

*McAlmond v. Myers*, 262 Or. 521, 532 (1972). Here, if the Senator Plaintiffs were placed on the primary ballot, and were later found to be disqualified, their constituents would lose the opportunity to choose a qualified nominee for Senate for a four-year term. ORS 249.190 (providing for parties to fill vacant primary nominations); ORS 171.051 (providing for filling of legislative vacancies by appointment). It is not in the public interest to issue a preliminary injunction requiring the Secretary of State to place candidates disqualified from the office on the primary ballot.

## V.    CONCLUSION

Plaintiffs' motion for a preliminary injunction should be denied.


DATED November 22, 2023.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General


*s/ Brian Simmonds Marshall*
BRIAN SIMMONDS MARSHALL #196129
THOMAS CASTELLI #226448
Senior Assistant Attorneys General
ANURADHA SAWKAR #181564
Assistant Attorney General
Trial Attorneys
Tel (971) 673-1880
Fax (971) 673-5000
Brian.S.Marshall@doj.state.or.us
thomas.castelli@doj.state.or.us
anu.sawkar@doj.state.or.us
Of Attorneys for Defendants


Page 27 -  DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION
BM2/jt3/932074461