IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

DENNIS LINTHICUM; REJEANA JACKSON; KLAMATH COUNTY REPUBLICAN CENTRAL COMMITTEE; BRIAN J. BOQUIST; JOHN SWANSON; POLK COUNTY REPUBLICAN CENTRAL COMMITTEE; CEDRIC HAYDEN; JOHN LARGE; LANE COUNTY REPUBLICAN CENTRAL COMMITTEE,

        Plaintiffs,

   v.

OREGON SENATE PRESIDENT ROB WAGNER; OREGON SECRETARY OF STATE LAVONNE GRIFFIN-VALDE,

        Defendants.

Civ. No. 6:23-cv-01624-AA

**OPINION & ORDER**

AIKEN, District Judge.

This case comes before the Court on Plaintiffs' Motion for Preliminary Injunction filed by Plaintiffs on behalf of Oregon State Senator Plaintiffs Dennis Linthicum and Brian J. Boquist (together, the "Senator Plaintiffs").[1] ECF No. 2. The

---

[1] Plaintiff Cedric Hayden is also a member of the Oregon State Senate, Compl. ¶ 6, but Plaintiffs are not seeking injunctive relief with respect to Senator Hayden in the present motion. References to the "Senator Plaintiffs" in this Opinion and Order should therefore be understood to refer only to Senator Linthicum and Senator Boquist.

Court heard argument on the motion on December 12, 2023. ECF No. 22. For the reasons set forth below, the motion is DENIED.

## LEGAL STANDARDS

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking a preliminary injunction must show (1) that he or she is likely to succeed on the merits; (2) he or she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of the equities tips in his or her favor; and (4) an injunction is in the public interest. *Id.* at 20.

In the Ninth Circuit, courts may apply an alternative "serious questions" test which allows for a preliminary injunction where a plaintiff shows that "serious questions going to the merits" were raised and the balance of hardships tips sharply in plaintiff's favor, assuming the other two elements of the *Winter* test are met. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011). This formulation applies a sliding scale approach where a stronger showing on one element may offset a weaker showing in another element. *Id.* at 1131. Nevertheless, the party requesting a preliminary injunction must carry its burden of persuasion by a "clear showing" of the four elements set forth above. *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

"Due to the urgency of obtaining a preliminary injunction at a point when there has been limited factual development, the rules of evidence do not apply strictly to

preliminary injunction proceedings." *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 n.5 (9th Cir. 2013).

## BACKGROUND

I. **Measure 113 and the Rules of the Oregon State Senate**

The Oregon Constitution requires that each chamber of the Oregon legislature have a quorum of two-thirds of the members to conduct business. Or. Const. art IV, § 12. In recent years, the legislature has been intermittently paralyzed by walkouts in which members of the minority party absent themselves to deny the legislature a quorum.

In response to these walkouts, Oregon voters overwhelmingly approved Measure 113 in 2022 to amend the Oregon Constitution to penalize excessive absences by legislators.[2] Following the passage of Measure 113, Article IV, section 15 of the Oregon Constitution was amended to read as follows:

> Either house may punish its members for disorderly behavior, and may with the concurrence of two thirds, expel a member; but not a second time for the same cause. **Failure to attend, without permission or excuse, ten or more legislative floor sessions called to transact business during a regular or special legislative session shall be deemed disorderly behavior and shall disqualify the member from holding office as a Senator or Representative for the term following the election after the member's current term is completed.**

---

[2] The fact that Measure 113 was advanced in response to legislative walkouts is expressly in the explanatory statement for the measure and is extensively reflected in the arguments in favor of the measure included in the Official Voters' Pamphlet, General Election, Nov. 8, 2022, 66-67 (Marion County version), *available at* http://records.sos.state.or.us/ORSOSWebDrawer/Record/9059467 (last accessed December 13, 2023). In the November 2022 general election, Measure 113 passed with more than 68% of the vote, with majorities voting in favor of the measure in 34 of 36 counties. *Official Results of November General*, *available at* https://sos.oregon.gov/elections/Pages/electionhistory.aspx (last accessed December 12, 2023). Of note, Measure 113 passed by substantial margins in the counties comprising the Senator Plaintiffs' districts. *Id.*

Or. Const. art. IV, § 15 (2022) (amendment in bold).

Article IV, § 11 of the Oregon Constitution provides that each house of the legislature "shall choose its own officer, judge of the election, qualifications, and returns of its own members," and "determine its own rules of proceeding." Or Const. art. IV, § 11. Consistent with that provision, the 82nd Legislative Assembly adopted the Rules of the Senate in January 2023 (the "2023 Senate Rules"). Sawkar Decl. Ex. 2, at 3. ECF No. 17-2.

Consistent with the amendments instituted by Measure 113, the 2023 Senate Rule 3.10(1) provides:

> A member shall attend all sessions of the Senate unless excused by the President. A request by a member to be excused from a session shall be in writing. The President shall indicate approval or disapproval of the request in writing. The Journal will record on each roll call all members "present," "excused," or "absent."

Sawkar Decl. Ex. 2, at 4.

Under 2023 Senate Rule 7.01(1), the President of the Senate is elected by majority vote of the members of the Senate at the beginning of the session and, under 2023 Senate Rule 7.10, the President "shall preside over deliberations of the Senate, preserve order and decorum and decide questions of order, subject to appeal by any two members." Sawkar Decl. Ex. 2, at 7.

## II.     The Senator Plaintiffs

Plaintiffs Dennis Linthicum and Brian J. Boquist are Oregon State Senators. Linthicum Decl. ¶ 1; Boquist Decl. ¶ 1. ECF Nos. 3, 4. The Senator Plaintiffs are members of the Republican Party, Compl. ¶ 6, which is the minority party in the

Oregon State Senate. Senator Linthicum represents Senate District 28, which covers Klamath County, as well as portions of Jackson and Deschutes Counties. *Oregon Blue Book: State Senators by District*, available at https://sos.oregon.gov/blue-book/Pages/state/legislative/senate-district.aspx (last accessed December 13, 2023). Senator Boquist represents Senate District 12, which covers portions of Polk and Yamhill Counties. *Id.*

Beginning on May 3, 2023, a group of Oregon state senators belonging to the minority party staged a walkout which deprived the chamber of a quorum. *See Oregon Senate Republicans stage walkout*, KGW (last updated May 3, 2023, 6:15 p.m.), *available at* https://www.kgw.com/article/news/politics/oregon-senate-republicans-walkout-may-3-2023/283-56243719-11aa-4e72-94b0-6dcadca21fb1 (last accessed December 13, 2023); Sawkar Decl. Ex. 1, at 10 ("Beginning on May 3, the Senate was unable to proceed with the transaction of business due to lack of a quorum.").

In response, on May 5, 2023, Defendant Senate President Robert Wagner "announced that requests for an excused absences [sic] on May 6 onward would be granted only in 'extraordinary circumstances.'" Sawkar Decl. Ex. 1, at 11. President Wagner "believed the lack of a quorum substantially threatened the Legislative Assembly's ability to do its critical duty of funding state government," and "concluded the extraordinary-circumstances standard was justified to ensure that the Senate and the Legislative Assembly could fulfill their constitutional roles." *Id.* In addition, President Wagner "revised prior approvals for absences on and following May 6, 2023,

and reversed prior approvals for absences due to a family event, a garden show, a family members graduation, and to care for parents." *Id.*[3]

The walkout lasted until late June 2023 and, by the time it came to an end, ten state senators, including the Senator Plaintiffs, had accrued more than ten unexcused absences. Boquist Decl. Ex. 1, at 2. ECF No. 4-1. The state senators were disqualified from running for reelection based on Measure 113 and a challenge to that determination is currently pending before the Oregon Supreme Court.

### A. Senator Boquist

Senator Boquist accrued 34 absences from scheduled floor sessions in 2023, of which 30 were unexcused. Boquist Decl. Ex. 1, at 2. The 30 unexcused absences occurred during the walkout between May 3, 2023, and June 25, 2023. *Id.* Senator Boquist does not appear to have submitted a request to be excused for his absence on May 23, 2023.[4] For his other absences, Senator Boquist requested to be excused:

- On May 3-7 because he had "flue or worse" and because of "I am protesting the refusal of the Senate to comply with Senate Rule 13.02 and ORS 171.134." Boquist Decl. Ex. 2, at 3.

- On May 8-11, May 15-18, May 24-25, May 30-31, and June 1-2 because he was "working with hundreds of constituents regarding what they

---

[3] The record before the Court indicates that President Wagner's strict policy on absences in this period was applied to members of the majority and minority parties alike. *See* Sawkar Decl. Ex. 3 (President Wagner declined to approve requests from a majority party senator to be excused to attend her daughter's senior recognition ceremony on May 25, 2023, and to attend her daughter's high school graduation on June 6, 2023).

[4] Two of Senator Boquist's requests to be excused, on June 5 and 6, 2023, were made in connection with the need to repair a broken water line at his home and both were approved. Boquist Decl. Ex. 2, at 16-17.

believe to be the unlawful civil and criminal actions of the Senate President and Secretary of the Senate." Boquist Decl. Ex. 2, at 6, 8-11, 13-15.

- On May 22 because he was "in district working with district constituents until committee times regarding Or Const Art I Sec 26." Boquist Decl. Ex. 2, at 12.

- On June 7-8 because he was "attending a long scheduled legislative related meeting in Eastern Oregon." Boquist Decl. Ex. 2, at 18.

- On June 16 and from June 20-24 because he was "[i]n Senate District 12 working with constituents regarding the continued unlawful unconstitutional actions of the Democrat controlled Senate." Boquist Decl. Ex. 2, at 19-24.

- On June 25 to attend religious services and in protest because "[t]he Oregon & U.S. Constitution are in tatters." Boquest Decl. Ex. 2, at 25.

On September 20, 2023, the Oregon Secretary of State issued a determination that Senator Boquist was not qualified to appear on the ballot for District 12 for the 2024 election based on the number of unexcused absences from senate floor sessions he accrued in 2023. Boquist Decl. Ex. 3. The Secretary of State notified Senator Boquist that his name would not appear on the May 2024 primary ballot. *Id.* Senator Boquist was notified that he had the right to appeal the Secretary of State's determination to the Oregon circuit courts. *Id.* On October 19, 2023, Secretary of

State confirmed its previous determination in a letter to Senator Boquist. Boquist Decl. Ex. 4.

## B. Senator Linthicum

Senator Linthicum accrued 37 absences from scheduled floor sessions in 2023, of which 32 were unexcused. Boquist Decl. Ex. 1, at 2. As with Senator Boquist, all 32 of Senator Linthicum's unexcused absences occurred during the walkout between May 3, 2023, and June 25, 2023. *Id.* For his unexcused absences, Senator Linthicum made multiple overlapping requests to be excused:

- On May 3, May 15-18, May 22-25, May 30-June 1, June 5-8, and June 15-16 because he was "protesting the refusal of the Senate to comply with Senate Rule 13.02 and ORS 171.134." Linthicum Decl. Ex. 1, at 7, 15-42, 45-46, 48-49, 51-56.

- On May 4-22 and June 5-8 for health reasons. Linthicum Decl. Ex. 1, at 8-9, 11-14, 43-44, 47, 50.

- On May 7 and May 14 to attend religious services. Linthicum Decl. Ex. 1, at 10.

- On June 16 for "obligations on ranch combined with 5 hour drive time to get to Salem." Linthicum Decl. Ex. 1, at 57.

- On June 20-25 because he was "working with constituents regarding the continued unlawful, unconstitutional actions of the Democrat controlled Senate." Linthicum Decl. Ex. 1, at 58-69.

On September 20, 2023, the Secretary of State issued a determination that Senator Linthicum was not qualified to appear on the ballot District 28 for the 2024 election based on the number of unexcused absences he accrued in 2023 and the Secretary notified Senator Linthicum that his name would not appear on the May 2024 primary ballot. Linthicum Decl. Ex. 2. On October 10, 2023, Senator Linthicum requested reconsideration of the Secretary of State's determination, which was denied on October 19, 2023. Linthicum Decl. Ex. 3.

## DISCUSSION

In their Complaint, ECF No. 1, Plaintiffs bring claims for violation of their civil rights pursuant to 42 U.S.C. § 1983 alleging (1) First Amendment retaliation; (2) violation of Plaintiffs' First Amendment right to freedom of association; (3) violation of Plaintiffs' First Amendment right to free exercise of their religion; (4) violation of Plaintiffs' Fourteenth Amendment due process rights; and (5) violation of Plaintiffs' Fourteenth Amendment equal protection rights. The present motion is, however, limited to the claim for First Amendment retaliation as to the Senator Plaintiffs.

### I.    Likelihood of Success on the Merits

To prevail on a motion for preliminary injunction, a plaintiff must show either a likelihood of eventual success on the merits or, under the Ninth Circuit's alternative "sliding scale" formulation of the test, serious questions going to the merits of their claims. *Winter*, 555 U.S. at 20; *Alliance for the Wild Rockies*, 632 F.3d 1131-32. However, a court's decision on a motion for preliminary injunction is not a ruling on

the merits of the claim. *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).

In their claim for First Amendment retaliation, the Senator Plaintiffs assert that President Wagner marked their absences as unexcused in retaliation their participation in the walkout and the Secretary of State relied on those unexcused absences as a basis for disqualifying the Senator Plaintiffs from running for reelection. Compl. ¶ 21.

"As a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content," although "this principle, like other First Amendment principles, is not absolute." *Ashcroft v. American Civil Liberties Union*, 535 U.S. 564, 573 (2002) (internal quotation marks and citation omitted, alterations normalized).

Among its other protections, the First Amendment "prohibits government officials from subjecting individuals to retaliatory actions after the fact for having engaged in protected speech." *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 474 (2022) (internal quotation marks and citation omitted). This prohibition extends to retaliation against elected officials for their protected speech. *Boquist v. Courtney*, 32 F.4th 764, 774 (9th Cir. 2022). "An elected official's claim under 42 U.S.C. § 1983 for First Amendment retaliation begins with the elements of the plaintiff's prima facie case." *Id.* at 775. To maintain a prima face case, a plaintiff must show (1) he engaged in constitutionally protected activity; (2) as a result he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from

continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." *Id.*

For purposes of this motion, the parties focus their dispute on the first element alone—whether participation in the legislative walkout by the Senator Plaintiffs is constitutionally protected activity. The First Amendment "has no application when what is restricted is not protected speech." *Nev. Comm'n on Ethics v. Carrigan*, 564 U.S. 117, 121 (2011). Plaintiffs bear the burden of establishing that the activity in question is protected expression. *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 n.5 (1984). Here, Plaintiffs assert that the walkouts were expressive in nature and intended as political speech.

However, these walkouts were not simply protests—they were an exercise of the Senator Plaintiffs' official power and were meant to deprive the legislature of the power to conduct business. *See* Or. Const., art. IV, § 12 ("Two thirds of each house shall constitute a quorum to do business,"). Whether the legislator is present in the chamber to debate and vote on a bill or absents themselves from the chamber to deny a quorum, both actions are alike in that they are an exercise of the power of the legislator's office. The Supreme Court has held that performing the functions of a legislator are not a personal prerogative but are instead a public trust. In *Nevada Commission on Ethics v. Carrigan*, the Supreme Court held that "a legislator's vote is the commitment of his apportioned share of the legislature's power to the passage or defeat of a particular proposal," and "[t]he legislative power thus committed is not

personal to the legislator but belongs to the people; the legislator has no personal right to it." *Carrigan*, 564 U.S. at 125-26. Put more plainly, "the procedures for voting in legislative assemblies pertain to legislators not as individuals but as political representatives executing the legislative process." *Id.* at 126 (internal quotation marks and citation omitted, alterations normalized). In consequence, the Supreme Court "rejected the notion that the First Amendment confers a right to use governmental mechanics to convey a message" and held that "a legislator has no right to use official powers for expressive purposes." *Id.* at 127; *see also Chula Vista Citizens for Jobs and Fair Competition v. Norris*, 755 F.3d 671, 680 (9th Cir. 2014), *on reh'g en banc*, 782 F.3d 520 (9th Cir. 2015) ("*Carrigan* establishes that the legal authority attaching to a legislative office is not an aspect of the freedom of speech protected by the First Amendment."). "Moreover, the fact that a nonsymbolic act is the product of deeply held personal belief—even if the actor would like it to *convey* his deeply held personal belief—does not transform action into First Amendment speech." *Carrigan*, 564 U.S. at 127 (emphasis in original).

The facts in *Carrigan* involved a legislator being prevented by a recusal law from voting or speaking on a particular matter before the state legislature. However, the same rationale can be applied to provisions which are intended to compel attendance at the legislature. Indeed, the United State Congress is empowered by the Constitution itself to "compel the Attendance of absent Members, in such Manner, and under such Penalties as each House may provide." U.S. Const. Art. I, § 5.[5] It

---

[5] The Oregon Constitution provides that, in the absence of a quorum, "a smaller number may meet; adjourn from day to day, and compel the attendance of absent members." Or. Const. art. IV, § 12.

has been long recognized that these penalties may be as severe as arrest and imprisonment. *See Kilbourn v. Thompson*, 103 U.S. 168, 190 (1880) ("So, also, the penalty which each House is authorized to inflict in order to compel the attendance of absent members may be imprisonment, and this may be for violation of some order or standing rule on that subject.").

The Supreme Court has held that "[a] universal and long-established tradition of prohibiting certain conduct creates a strong presumption that the prohibition is constitutional." *Carrigan*, 564 U.S. at 122 (internal quotation marks and citation omitted). If no less a body than the United States Congress may compel the attendance of its members by imprisonment without running afoul of the First Amendment, then the Court cannot see how a lesser penalty, such as temporary disqualification, or the threat of temporary disqualification, for the same conduct would constitute a violation of the free speech rights of the Senator Plaintiffs.[6]

In sum, the Court concludes that the use of legislative walkouts is not constitutionally protected activity for purposes of the Free Speech Clause of the First Amendment and so, on this record, Plaintiffs have not established either a likelihood of success on the merits or serious questions going to the merits of their claim for First Amendment retaliation.

## II.   Irreparable Harm

In order to satisfy the standard for a preliminary injunction, a party must show that "the applicant is likely to suffer irreparable harm before a decision on the merits

---

[6] States "certainly" have the right to establish neutral candidacy qualifications, such as age, residency, or term limits. *Bates v. Jones*, 131 F.3d 843, 847 (9th Cir. 1997).

can be rendered." *Winter*, 555 U.S. at 22 (internal quotation marks and citation omitted). The Ninth Circuit has held that "an alleged constitutional infringement will often alone constitute irreparable harm," but that, in such cases, the plaintiff must still establish "a sufficient likelihood of success on the merits of its constitutional claims to warrant the grant of a preliminary injunction." *Associated Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1412 (9th Cir. 1991) (internal quotation marks and citation omitted, alterations normalized). Here, the Court has determined that Plaintiffs have not established a likelihood of success on the merits, but even if the Court were to accept that the Senator Plaintiffs will suffer an irreparable harm in the absence of an injunction, that showing would outweighed by the other *Winter* factors.

### III.   Balance of the Equities and the Public Interest

Under the "balance of equities" analysis, a court must "balance the competing claims of injury" and "consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (internal quotation marks and citation omitted). The public interest inquiry, by contrast, "primarily addresses impact on non-parties rather than parties." *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014). When the government is a party, these last two factors of the preliminary injunction analysis will merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

Here, Plaintiffs assert that the public interest and the balance of the equities favor granting the injunction permitting the Senator Plaintiffs to appear on the ballot

for the upcoming elections. The Ninth Circuit has "consistently recognized the significant public interest in upholding First Amendment principles." *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014) (internal quotation marks and citation omitted). However, the Court has already concluded that Plaintiffs have not made a sufficient showing on their claim for First Amendment retaliation.

Furthermore, Measure 113 was, as previously noted, presented to the people of Oregon as a means to curb the use of legislative walkouts. The measure passed by an overwhelming margin, reflecting wide popular support across the state. Here, the Senator Plaintiffs chose to walk out of the legislature and, in the process, accrued substantially more than the allowed-for unexcused absences. Their subsequent disqualification is the effect of Measure 113 working as intended by the voters of Oregon. The Ninth Circuit has held that "it is clear that a state suffers irreparable injury whenever an enactment of its people or their representatives is enjoined." *Coal. for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997); *see also Video Gaming Techs., Inc. v. Bureau of Gambling Control*, 356 Fed. App'x 89, 92 (9th Cir. 2009) (holding same). The Court cannot conclude that it would be in the public interest to grant the requested injunction to allow the Senator Plaintiffs to effectively negate a lawfully enacted measure.

The Court concludes that the balance of the equities and the public interest weigh against the requested injunction.

## CONCLUSION

For the reasons set forth above, the Court concludes that Plaintiffs have failed to carry their burden to establish the requisite elements by a clear showing. The Court therefore declines to issue the requested injunction and Plaintiffs' Motion for a Preliminary Injunction, ECF No. 2, is DENIED.

It is so ORDERED and DATED this ___13th___ day of December 2023.

    /s/Ann Aiken
ANN AIKEN
United States District Judge